IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Marcus T. Pettit             :
                                    :
            v.                    :
                                      :
Commonwealth of Pennsylvania,    :
Department of Transportation,     :
Bureau of Driver Licensing,       :   No. 661 C.D. 2023
                Appellant    :   Submitted: April 11, 2024


BEFORE:   HONORABLE ANNE E. COVEY, Judge
                HONORABLE CHRISTINE FIZZANO CANNON, Judge
                HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


OPINION
BY JUDGE FIZZANO CANNON               FILED: May 8, 2024


The Pennsylvania Department of Transportation, Bureau of Driver Licensing (DOT) appeals from the May 24, 2023 order (Trial Court Order)[1] of the Court of Common Pleas of Berks County (Trial Court) sustaining Marcus T. Pettit's (Licensee) statutory appeal from a 12-month driver's license suspension (Suspension) imposed by DOT pursuant to the Vehicle Code's Implied Consent Law, 75 Pa. C.S. § 1547(b) (Implied Consent Law), as a result of Licensee's refusal to submit to chemical testing upon his arrest for driving under the influence of

---

[1] Although dated May 23, 2023, the Trial Court Order was not received and filed in the Court of Common Pleas of Berks County Prothonotary's Office until May 24, 2023. *See* Trial Court Order; Reproduced Record (R.R.) at 90a.

alcohol or a controlled substance[2] (DUI). Upon review, we reverse the Trial Court Order and direct DOT to reinstate the Suspension.

## I. Background and Procedural Posture

The facts necessary to decide the issues raised in this appeal are straightforward and not in dispute. Following Licensee's May 23, 2022 DUI arrest by the Exeter Township Police Department, DOT notified him on June 7, 2022, that his operating privileges would be suspended for a period of 12 months. Licensee appealed the Suspension to the Trial Court, which conducted a hearing on March 21, 2023. *See* Trial Court Opinion dated August 25, 2023 (Trial Court Opinion) at 1-2; Reproduced Record (R.R.) at 106a-07a.

At the hearing, DOT offered numerous documents for entry into evidence, including a DOT DL-26A implied consent form (DL-26A Form)[3]

---

[2] 75 Pa. C.S. § 3802.

[3] The DL-26A Form, entitled "Chemical Test Warnings and Report of Refusal to Submit to a Breath Test as Authorized by Section 1547 of the Vehicle Code in Violation of Section 3802," contains the following warnings:

> It is my duty as a police officer to inform you of the following:
>
> 1. You are under arrest for driving under the influence of alcohol or a controlled substance in violation of Section 3802 of the Vehicle Code.
>
> 2. I am requesting that you submit to a chemical test of breath. You must successfully complete two consecutive breath samples in order to complete a chemical test of breath.
>
> 3. If you refuse to submit to the breath test, your operating privilege will be suspended for at least 12 months. If you previously refused a chemical test or were previously convicted of driving under the influence, your operating privilege will be suspended for up to 18 months. If your operating privilege is suspended for refusing chemical testing, you will have to pay a restoration fee of up to $2,000 in order to have your operating privilege restored. In

2

purportedly read to Licensee and completed by Exeter Township Police Department Officer Ryan Kardoley, who was no longer employed by the Exeter Township Police Department and who was unavailable to testify at the time of the hearing before the Trial Court.[4]  *See* Trial Court Opinion at 2; R.R. at 107a.  Because Officer Kardoley was unavailable, Licensee objected to the admission of the DL-26A Form on hearsay grounds.  *See id.*  The Trial Court admitted the DL-26A Form into evidence over Licensee's objection but allowed the parties to submit briefs on the issue following the hearing, which they did.  *See id.*  Licensee offered no evidence on his own behalf beyond cross-examination of DOT's witnesses.  *See* Notes of Testimony, March 21, 2023 (N.T.); R.R. at 17a-39a.  Following the submission and review of the parties'

> addition, if you refuse to submit to the breath test, and you are convicted of violating Section 3802(a)(1) (relating to impaired driving) of the Vehicle Code, then, because of your refusal, you will be subject to more severe penalties set forth in Section 3804(c) (relating to penalties) of the Vehicle Code.  These are the same penalties that would be imposed if you were convicted of driving with the highest rate of alcohol, which include a minimum of 72 consecutive hours in jail and a minimum fine of $1,000.00, up to a maximum of seven years in jail and a maximum fine of up to $15,000.
>
> 4. You have no right to speak with an attorney or anyone else before deciding whether to submit to testing.  If you request to speak with an attorney or anyone else after being provided these warnings or you remain silent when asked to submit to a breath test, you will have refused the test.

R.R. at 46a.  The "Affidavit" portion of the DL-26A Form was signed by Exeter Township Police Department Officer Ryan Kardoley, who also signed the attestation thereon indicating that Licensee refused to sign the DL-26A Form.  *See id.*

[4] The Trial Court granted two continuances from the original September 13, 2022 hearing date to allow DOT to secure the appearance of Officer Kardoley at the hearing.  *See* Trial Court Opinion dated August 25, 2023 (Trial Court Opinion) at 2.; R.R. at 107a.  When DOT explained at the hearing on March 21, 2023, that it still had not been able to locate Officer Kardoley for the purpose of securing his testimony, the Trial Court proceeded with a hearing on the merits.  *See id.*

3

submitted briefs on the DL-26 Form hearsay question, the Trial Court entered the Trial Court Order sustaining Licensee's appeal and revoking the Suspension.[5]  *See* Trial Court Opinion at 2-3; R.R. at 107a-08a; *see also* Trial Court Order; R.R. at 90a.  DOT appealed to this Court.

## II. Issues

DOT raises three claims on appeal.[6]  First, DOT claims that the Trial Court abused its discretion by holding that the DL-26A Form was inadmissible hearsay that could not be considered for the truth of the matter asserted.  *See* DOT's Br. at 4 & 12-18.  Second, DOT argues that the Trial Court abused its discretion by holding that the DL-26A Form could not be considered for the non-hearsay purpose of establishing that the statements contained in the DL-26A Form were made.  *See id.* at 4 & 18-22.  Third, DOT claims the Trial Court abused its discretion when it sustained Licensee's appeal without considering the DL-26A Form because the DL-26A Form was competent and admissible evidence properly introduced.  *See id.* at 4 & 22-26.

---

[5] The Trial Court Order consisted simply of an order with a check on a box denoting the option "SUSTAINED and the suspension shall be RESCINDED" from a number of alternative options on what is obviously a form order employed by the Trial Court for license suspension appeals.  *See* Trial Court Order.  The Trial Court filed the Trial Court Opinion on August 25, 2023, in which it explained that its rationale behind entering the Trial Court Order was that DOT failed to meet its evidentiary burden to prove Licensee refused chemical testing because the Trial Court determined that the DL-26A Form was impermissible hearsay.  *See* Trial Court Opinion.

[6] "Our standard of review in a license suspension case is to determine whether the factual findings of the trial court are supported by [substantial] evidence and whether the trial court committed an error of law or an abuse of discretion."  *Negovan v. Dep't of Transp., Bureau of Driver Licensing*, 172 A.3d 733, 735 n.4 (Pa. Cmwlth. 2017).

4

## III. Discussion

### A. Admission of the DL-26A Form for the Truth of the Matter Asserted

Initially, we observe that "[t]he admission of evidence is solely within the discretion of the trial court, and a trial court's evidentiary rulings will be reversed on appeal only upon an abuse of that discretion." *Commonwealth v. Woodard*, 129 A.3d 480, 494 (Pa. 2015) (quoting *Commonwealth v. Reid,* 99 A.3d 470, 493 (Pa. 2014)). DOT first argues that the Trial Court erred by failing to find that the DL-26A Form was admissible into evidence for the truth of the matter asserted as a business record. *See* DOT's Br. at 12-18. DOT argues that the DL-26A Form is admissible under the business records hearsay exceptions provided in Pennsylvania Rule of Evidence 803(6) and/or the Uniform Business Records as Evidence Act, 42 Pa.C.S. § 6108. *See id.* To the extent that the DL-26A Form contains any hearsay, we agree.

Hearsay is an out-of-court statement offered into evidence to prove the truth of the matter asserted. *See* Pa.R.E. 801(c). Generally speaking, "[a]bsent an exception, hearsay is inadmissible and cannot be admitted and relied upon by the fact finder." *Porter Twp. Initiative v. E. Stroudsburg Area Sch. Dist.*, 44 A.3d 1201, 1211 (Pa. Cmwlth. 2012); *see also* Pa.R.E. 802. Hearsay may be admissible into evidence, however, "as provided by [the Pennsylvania Rules of Evidence], by other rules prescribed by the Pennsylvania Supreme Court, or by statute." Pa.R.E. 802. The DL-26A Form may constitute hearsay to the extent it contains out-of-court statements offered to prove the truth of the matters asserted therein. *See First Ward Republican Club of Phila. v. Commonwealth*, 11 A.3d 38, 44 (Pa. Cmwlth. 2010) (finding police reports containing out-of-court statements offered for the truth of the matters asserted to be hearsay). Here, the portion of the DL-26A Form relating to

5

Licensee's refusal was offered for the truth of that matter and therefore was hearsay to that extent.

Pursuant to the business records exception, Pennsylvania Rule of Evidence 803(6) provides for the admission of a record[7] of an act, event, or condition where the following conditions are met:

> (A) the record was made at or near the time by–or from information transmitted by–someone with knowledge;
>
> (B) the record was kept in the course of a regularly conducted activity of a "business", which term includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit;
>
> (C) making the record was a regular practice of that activity;
>
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
>
> (E) the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness.

Pa.R.E. 803(6).

Additionally, the General Assembly enacted Section 6108 of the Judicial Code, 42 Pa.C.S. § 6108, known as the "Uniform Business Records as Evidence Act,"

---

[7] A "record" pursuant to the business records hearsay exception includes "a memorandum, report, or data compilation in any form[.]"  Pa.R.E. 803(6).

6

to create an additional exception to the hearsay rule in circumstances where a record of an act, a condition, or an event was made in the regular course of business, at or near the time of the act, condition, or event, and where the sources of information, method, and time of preparation were such as to justify its admission.

*First Ward*, 11 A.3d at 45. The Uniform Business Records as Evidence Act provides that

[a] record of an act, condition or event shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business[8] at or near the time of the act, condition or event, and if, in the opinion of the tribunal, the sources of information, method and time of preparation were such as to justify its admission.

42 Pa.C.S. § 6108(b). As this Court has explained:

Under this exception, the Pennsylvania Supreme Court has held that if a qualifying witness can provide sufficient information relating to the preparation and maintenance of the records to justify the presumption of trustworthiness for the business records exception, a sufficient basis is provided to offset the hearsay character of the evidence and it is not necessary to produce either the preparer or the custodian of the record at the time the entries were made. So long as the *authenticating witness* can provide sufficient information relating to the preparation and maintenance of the records to justify a presumption of trustworthiness of the business records of a company, a

---

[8] As used in the Uniform Business Records as Evidence Act, the term "business" "includes every kind of business, profession, occupation, calling, or operation of institutions whether carried on for profit or not." 42 Pa.C.S. § 6108(c).

> sufficient basis is provided to offset the hearsay character of the evidence.

*First Ward*, 11 A.3d at 45-46 (internal citations omitted; emphasis in original); *see also Yongs Place, Inc. v. Pa. Liquor Control Bd.* (Pa. Cmwlth., No. 483 C.D. 2021, filed May 12, 2023),[9] slip op. at 9. Further,

> [a]n individual may be a qualifying witness and his testimony may lay a proper foundation for the admission of a report if his responsibilities include the review of the report in question and he testifies that the report was prepared by a subordinate of his and maintained for him by a member of his staff.

*First Ward*, 11 A.3d at 46; *see also Yongs Place*, slip op. at 9.

In *Yongs Place*, a police officer with oversight responsibilities testified that a subordinate prepared certain police reports pursuant to a standing directive to prepare such reports at or near the time of the incident in question, that, although he did not prepare the reports himself, the officer was responsible for reviewing the reports in question, and that such reports are maintained by electronically following review and approval. *See id.*, slip op. at 9-10. The officer detailed the preparation and maintenance procedures for such reports and his review of them. *See id.*, slip op. at 10. Additionally, a second police officer's personal knowledge corroborated the documents sought to be introduced into evidence. *See id.*, slip op. at 11. This Court determined that such testimony "provided sufficient information relating to the preparation and maintenance of the reports to justify a presumption of trustworthiness under the business records exception to offset the hearsay character

---

[9] Pursuant to Commonwealth Court Internal Operating Procedure Section 414(a), 210 Pa. Code § 69.414(a), unreported panel decisions of this Court issued after January 15, 2008, may be cited for their persuasive value.

of the evidence[,]" and that "[a]bsent evidence indicating a lack of trustworthiness," the trial court properly admitted and relied upon the documents described by the officer under the business record exception to the rule against hearsay. *See id.*, slip op. at 10, 11.

Likewise, in *Paey Associates, Inc. v. Pennsylvania Liquor Control Board*, 78 A.3d 1187 (Pa. Cmwlth. 2013), this Court determined that a police report fell within the Uniform Business Records as Evidence Act's business records exception and was admissible into evidence in an administrative agency matter where the report's author was unavailable but another officer testified as an authenticating witness that he – the authenticating officer – had reviewed and approved the report in the normal course of his responsibilities. *See id.* at 1195 & 1197. The Court determined that, where the authenticating witness "provided sufficient information relating to the preparation and maintenance of the report to justify a presumption of its trustworthiness[,]" the contents of the report were admissible. *See id.*

In the instant matter, Sergeant Darrin Gartner testified on behalf of DOT at the hearing before the Trial Court. *See* N.T. at 10-19; R.R. at 26a-35a. Sgt. Gartner testified that he has been employed with the Exeter Township Police Department for 28 years and that, as a platoon sergeant, he is involved in the training of officers. *See* N.T. at 10, 14; R.R. at 26a, 30a. He explained that officers are trained to read DL-26A forms verbatim to persons under arrest for DUI either at the hospital where chemical testing occurs or during arrest processing. *See* N.T. at 14-15; R.R. at 30a-31a. Sgt. Gartner further explained that on May 23, 2022, Officer Kardoley, who was beyond his training period, was assigned to Sgt. Gartner's platoon and had been so assigned for the previous six or seven months. *See* N.T. at

9

10, 13-15; R.R. at 26a, 29a-31a. Sgt. Gartner testified that, as platoon sergeant, he reviewed Officer Kardoley's paperwork on a daily basis and was familiar with Officer Kardoley's signature. *See* N.T. at 10; R.R. at 26a. Sgt. Gartner also testified that he recognized the copies of the DL-26A Form included with DOT's exhibit packets, that the copies were accurate copies of the DL-26A Form completed by Officer Kardoley and submitted to Sgt. Gartner following Licensee's arrest on May 23, 2022, and that Sgt. Gartner recognized the signature on the DL-26A Form as that of Officer Kardoley. *See* N.T. at 13-14; R.R. at 29a-30a. Sgt. Gartner explained that Officer Kardoley handed him the completed DL-26A Form, which he thereafter handed over to the arresting officer as per the Exeter Township Police Department's normal protocol for the maintenance of DL-26A forms. *See* N.T. at 18; R.R. at 34a. Finally, Sgt. Gartner testified that he did not know why Officer Kardoley resigned from the Exeter Township Police Department, but that he knew Officer Kardoley's resignation was not the result of any failure to read DL-26 forms. *See* N.T. at 17; R.R. at 33a.

Sergeant David Bentz[10] also testified before the Trial Court. See N.T. at 3-9; R.R. at 19a-25a. As the arresting officer, Sgt. Bentz testified regarding the specifics of Licensee's May 23, 2022 DUI arrest. *See* N.T. at 4-6; R.R. at 20a-22a. Sgt. Bentz explained that, following the arrest, Officer Kardoley was assigned to take Licensee for chemical testing pursuant to the policies and protocols established by the Berks County District Attorney's Office. *See* N.T. at 6-7; R.R. at 22a-23a. Sgt. Bentz explained that he did not witness the attempted chemical testing. *See id.*

The Trial Court admitted the DL-26A Form over Licensee's hearsay objections and invited the parties to brief argument on the evidentiary issue for the

---

[10] Sgt. Bentz has been a police officer for 28 years and had been with the Exeter Township Police Department for 23 years. *See* N.T. at 3-4; R.R. at 19a-20a.

Trial Court following the hearing. *See* N.T. at 19, 21-23; R.R. at 35a, 37a-39a. After receiving the parties' briefs, the Trial Court sustained Licensee's appeal. In the Trial Court Opinion drafted following DOT's appeal, the Trial Court explained its determination on the evidentiary issue resulting from Officer Kardoley's absence as follows:

> Licensee, as per his rights, should have the opportunity to cross-examine Officer Kardoley. Absent such opportunity or waiver of those rights, the Trial Court could not consider anything Officer Kardoley might have testified to had he been available or have made a determination that such testimony might have been credible. [DOT], without Officer Kardoley, could not establish that the DL-26[A Form] was read to Licensee *or* that Licensee refused testing.

Trial Court Opinion at 8; R.R. at 113a (emphasis in original). The Trial Court continued:

> In sum, [DOT] argues that the Trial Court should have allowed it to introduce a DL-26[A] warning against a hearsay objection because it was not proffered for the truth of the matter asserted (when it was), should have inferred an unavailable witness would have testified credibly in response to questioning, and that [] Licensee was under an obligation to proactively refute the case against him and failure to do so should be considered the same as acquiescing to the claims made against him. [DOT] suggests these were mistakes in ruling, that [Licensee's appeal] should be denied/dismissed, and Licensee's [S]uspension should be reinstated.
>
> In considering the foregoing facially incorrect arguments, after review of the testimony and exhibits introduced at the [h]earing, the Trial Court sustained Licensee's [s]uspension [a]ppeal, having found [DOT]

11

> failed to meet its burden to show [] Licensee refused to submit to a chemical test and was warned that refusal would result in a license suspension. Failing to meet two of the four prongs prescribed in [*Department of Transportation v.*] *O'Connell*, [555 A.2d 873 (Pa. 1989)[11]] [DOT] never shifted the burden to [] Licensee to establish that his alleged refusal was not knowing or conscious or that he physically was unable to take the test. These things mandate that the Trial Court sustain the appeal.

Trial Court Opinion at 9; R.R. at 114a.

We do not agree that the DL-26A Form was hearsay not subject to an exception. To the extent that its documentation of Licensee's refusal constitutes hearsay, the DL-26A Form fits within the business records exceptions of both Pennsylvania Rule of Evidence 803(6) and the Uniform Business Records as Evidence Act. The DL-26A Form records the acts or events of Officer Kardoley issuing refusal warnings to Licensee and Licensee's refusal to submit to the requested breath testing. Pursuant to established Exeter Township Police Department protocols, the DL-26A Form was completed at the time of the refusal by Officer Kardoley, the police officer who administered the refusal warnings. DOT sought to authenticate the DL-26A Form through the testimony of Sgt. Gartner, who testified that his duties included reviewing Officer Kardoley's reports and that the DL-26A Form was maintained by the arresting officer pursuant to Exeter Township Police Department protocols. Further, the Trial Court found Sgt. Gartner credible, and no other testimony or documentation was entered into evidence to indicate that

---

[11] "*O'Connell* warnings" is the term of art derived from our Supreme Court's decision in *Department of Transportation v. O'Connell*, 555 A.2d 873 (Pa. 1989), and commonly used to denote the warnings that police in the Commonwealth are required to provide motorists arrested for DUI regarding the refusal of requested chemical testing, which warnings regarding breath and blood chemical testing are contained in DOT's DL-26A and DL-26B forms, respectively.

12

the DL-26A Form lacked trustworthiness. *See* Trial Court Opinion at 8; R.R. at 113a ("Sgt. Gartner testified credibly."). Sgt. Bentz's testimony, likewise undisputed, corroborated that Officer Kardoley was assigned to take Licensee for chemical testing pursuant to established protocols. These facts illustrate a sufficient basis to offset the hearsay character of the DL-26A Form under either Pennsylvania Rule of Evidence 803(6) or the Uniform Business Records as Evidence Act without the production of the preparer or the custodian of the record at the time the record was made. *See* Pa.R.E. 803(6); 42 Pa.C.S. § 6108(b); *see also First Ward*, 11 A.3d at 45-46; *Yongs Place*, slip op. at 10-11. Because it was covered by a hearsay exception, the DL-26A Form could be admitted and the contents thereof could be considered for the truth. *See Paey*, 78 A.3d at 1195, 1197. Therefore, the Trial Court erred by concluding that the DL-26A Form was inadmissible hearsay and by not considering the DL-26A Form for the truth of the matter asserted *i.e.*, that Licensee refused to submit to a breath test. *See Yongs Place*, slip op. at 10-11; *Paey*, 78 A.3d at 1195, 1197.

In a related argument, DOT maintains that the DL-26A Form was admissible because it was not hearsay to the extent that it merely documented that the requisite warning was given. Again, we agree. There is a critical distinction as to whether a statement is offered for its truth or merely to establish that the statement was made. This Court explained that distinction as applied to analogous circumstances in *Department of Transportation, Bureau of Traffic Safety v. Grasso*, 508 A.2d 643 (Pa. Cmwlth. 1986). In *Grasso*, an arresting officer sought to testify concerning the administration of the DL-26A warning to an arrestee by another officer who was not in attendance at the suspension hearing. The trial court excluded

13

the testimony and reversed the license suspension. This Court concluded that the trial court committed an error of law in so doing. We explained:

> The trial court was correct in concluding that DOT was required to present evidence that [the arrestee] was requested to submit to a breathalyzer test and that he was informed of the consequences of refusing. The trial court erred, however, in not allowing [the arresting o]fficer . . . to testify as to whether the administering officer made the request and gave the requisite warning.
>
> Any testimony given by [the arresting o]fficer . . . concerning what the administering officer said to [the arrestee] *would not be offered to prove the truth of what the administering officer said. Such testimony would be offered merely to show that the administering officer made such a statement.* Our Supreme Court has said that "[*t*]*he hearsay rule has no application where the question is whether certain things were said or written by a third person and not whether they are true.*" *Commonwealth v. Jacobs*, . . . 284 A.2d 717, 719 ([Pa.]1971), *cert. denied*, 409 U.S. 856 (1972). *See also Dep[']t of Transp[.], Bureau of Traffic Safety v. Goldman*, . . . 482 A.2d 1383 ([Pa. Cmwlth.] 1984); *Haklits v. Commonwealth*, . . . 418 A.2d 772 ([Pa. Cmwlth.] 1979).
>
> It is clear that the trial court committed an error of law in excluding as hearsay [the arresting o]fficer['s] . . . testimony concerning what the administering officer said to [the arrestee].

*Id.* at 644 (emphasis added).

The same distinction applies here. In other words, the written statement of Officer Kardoley, the absent administering officer, was not offered to prove its truth, *i.e.*, that failure to submit to the test would result in license suspension. Rather, it was offered merely as evidence that Officer Kardoley read the warning statement.

14

As this Court made clear in *Grasso*, evidence submitted for the latter purpose is not hearsay.

In *Grasso*, the evidence at issue was oral testimony from the arresting officer concerning the administering officer's reading of the warning, whereas here, the evidence was the administering officer's written attestation of having given the warning. However, there is no meaningful difference between the two for purposes of determining whether the absent officer's statement was hearsay. *See* Pa.R.E. 801(a) (defining a "statement" as "a person's oral assertion, written assertion, or nonverbal conduct"). Therefore, we conclude that the Trial Court here, like the trial court in *Grasso*, committed an error of law in excluding as hearsay the evidence of the statement of Officer Kardoley, the administering officer.[12]

## B. Trial Court Failure to Consider Competent and Admissible Evidence

In its third argument, DOT argues that the Trial Court abused its discretion by sustaining Licensee's appeal without considering the DL-26A Form because the DL-26A Form was competent and admissible evidence properly introduced. *See* DOT's Br. at 22-26. We agree.

---

[12] Additionally, to the extent the Trial Court implied in its reasoning that it could not consider the DL-26A Form because Licensee had a Sixth Amendment right, U.S. Const. amend. VI, to confront/cross-examine Officer Kardoley, the Trial Court is mistaken. *See* Trial Court Opinion at 8-9; R.R. at 113a-14a. "This Court has repeatedly ruled that the Sixth Amendment right to confront and cross-examine witnesses does not apply to license suspension proceedings, . . . as they are not penal in nature, but rather civil proceedings." *Stenhach v. Dep't of Transp., Bureau of Driver Licensing*, 651 A.2d 218, 220 (Pa. Cmwlth. 1994); *see also Commonwealth v. Xiong*, 630 A.2d 446, 453 (Pa. Super. 1993) (holding that the admission of a business record under the Uniform Business Records as Evidence Act does not violate constitutional rights to confrontation and cross-examination because "the inherent reliability and trustworthiness of factual entries in a business record negate the need for cross-examination" and "[r]equiring cross-examination regarding facts contained in [a business] record . . . would therefore obviate the purpose and need for the exception"). Accordingly, the Trial Court erred to the extent it based its refusal to consider the DL-26A Form on a non-existent right to confrontation.

As this Court has observed:

> To sustain a license suspension under [the Implied Consent Law], DOT has the burden of establishing that (1) the licensee was arrested for drunken driving by a police officer having reasonable grounds to believe that the licensee was driving while under the influence, (2) the licensee was requested to submit to a chemical test, (3) the licensee refused to do so and (4) the licensee was warned that refusal would result in a license suspension. Once DOT meets this burden, the burden shifts to the licensee to establish that he or she either was not capable of making a knowing and conscious refusal or was physically unable to take the test.

*Giannopoulos v. Dep't of Transp., Bureau of Driver Licensing*, 82 A.3d 1092, 1094 (Pa. Cmwlth. 2013) (quoting *Wright v. Dep't of Transp., Bureau of Driver Licensing,* 788 A.2d 443, 445 (Pa. Cmwlth. 2001)). Further, "[d]river's license suspension proceedings are civil, not criminal in nature, and [DOT] must prove the elements of its case by a preponderance of the evidence, and not beyond a reasonable doubt." *Sebek v. Dep't of Transp., Bureau of Driver Licensing*, 714 A.2d 526, 528 (Pa. Cmwlth. 1998).

Here, the Trial Court improperly declined to consider the DL-26A Form in its determination of Licensee's underlying appeal. As discussed *supra*, the Trial Court should have admitted and considered the DL-26A Form pursuant to the business records exception to the rule against hearsay. Accordingly, the Trial Court erred by sustaining Licensee's appeal of the Suspension without considering the DL-26A Form.

Further, the DL-26A Form proved three of the four elements required to support the Suspension based upon Licensee's refusal to submit to chemical

16

testing: that police requested that Licensee submit to a breath test; that Licensee refused to submit to the requested breath test; and that Licensee was informed that a refusal would result in a license suspension. *See* DL-26A Form; R.R. at 46a. Sgt. Bentz's evidence satisfied the fourth requirement that DOT establish that Licensee was arrested for driving under the influence of alcohol. This evidence sufficed to prove the elements of a refusal by a preponderance of the evidence and suspend an operator's license based on an Implied Consent refusal. Licensee put forth no evidence to contradict DOT's proof. Accordingly, the Trial Court erred by sustaining Licensee's statutory appeal without considering the DL-26A Form.

To the extent Licensee requests a remand to the Trial Court for a new hearing to afford him an opportunity to present a defense, he is not entitled to such a remedy. *See* Licensee's Br. at 18. Licensee had his chance to refute DOT's refusal accusations at the hearing. The Trial Court did not sustain Licensee's hearsay objection to the DL-26A Form, but instead admitted the DL-26A Form into evidence over Licensee's objection. *See* N.T. at 19. R.R. at 35a. As discussed *supra*, DOT's evidence satisfied the elements required to prove a license suspension based on a licensee's refusal to submit to requested chemical testing. As a result of the Trial Court admitting the DL-26A Form into evidence over Licensee's objection, the burden shifted at that time to Licensee to establish that he either was not capable of making a knowing and conscious refusal or was physically unable to take the test. *See Giannopoulos*, 82 A.3d at 1094. At a minimum, Licensee was on notice from the admission of the DL-26A Form at the hearing that he might be bound by his failure to offer a defense. Otherwise stated, after DOT put forth evidence establishing the elements required to suspend Licensee's operating privilege based on an Implied Consent refusal, Licensee was then obligated to put on his defense if

17

he chose to do so. He did not. Licensee put forth no evidence to illustrate either that he had been incapable of making a knowing and conscious refusal or had been physically unable to take the test. Instead, Licensee apparently relied on the argument that, without the DL-26A Form, DOT could not establish that police requested Licensee submit to chemical testing, that the police warned him that a refusal would result in a license suspension, and/or that he ultimately refused. To allow Licensee to reverse his litigation strategy and put forth at a new hearing evidence that he chose to forego presenting at the previous hearing when he had the opportunity to do so would effectively provide Licensee with another bite at the evidentiary apple. This we will not do. In hindsight, while Licensee's choice not to put forth evidence after DOT shifted its evidentiary burden may have been a rational litigation strategy based on an argument that the DL-26A Form should have been excluded from evidence, it was also a fatal one.

## IV. Conclusion

For the foregoing reasons, we reverse the Trial Court Order and direct DOT to reinstate the Suspension.

_____
CHRISTINE FIZZANO CANNON, Judge

18

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Marcus T. Pettit | : | |
| | : | |
| v. | : | |
| | : | |
| Commonwealth of Pennsylvania, | : | |
| Department of Transportation, | : | |
| Bureau of Driver Licensing, | : | No. 661 C.D. 2023 |
| Appellant | : | |

# **O R D E R**

AND NOW, this 8th day of May, 2024, the May 24, 2023 order of the Court of Common Pleas of Berks County is REVERSED, and the Department of Transportation, Bureau of Driver Licensing, is hereby directed to REINSTATE the 12-month suspension of Marcus T. Pettit's operating privilege.

_____
CHRISTINE FIZZANO CANNON, Judge